JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants, Joseph and Mary George ("the Georges"), appeal from a judgment of the Parma Municipal Court in favor of plaintiff-appellee, Darwin Monnin, d.b.a. JS Group ("Monnin"), awarding him $5,132.60[1] as reasonable compensation for home improvement services rendered to the Georges. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} A review of the record reveals the following: The Georges are the owners of a residence located at 2772 Burden Drive in Parma, Ohio. They were referred to Martin Fano ("Fano") for the purpose of having work performed on their residence. Fano was a "lead man" and procured work for companies in a sales capacity. Fano approached Monnin with the George lead and Monnin set up an appointment with the Georges. Monnin, accompanied by Fano, visited the Georges' home on several occasions.
 {¶ 3} On December 3, 2003, the parties entered into a contract for home improvements, including an addition and a new front door, at a cost of $36,850. The contract indicated that "JS Group" was the contractor and was signed by "Joe George" as "Homeowner" and by "Darwin Monnin" as "Contractor." Martin Fano also signed the contract, but there is some dispute as to whether or not he signed as a "Contractor" or as a "Witness." (Tr. 28, 57). The Georges wrote a check in the amount of $20,500 as a down payment, made payable to "JS Group."
 {¶ 4} The following day, Monnin asked Fano to return the check to the Georges. The reasons for this are also disputed. Monnin claims that he returned the check because he knew he would not be able to perform any of the work until the Spring. Fano claims that the check was returned because Monnin did not have a bank account from which to cash it. In any event, the Georges cancelled that check and wrote a new check for $20,500 made payable to Fano only. This check was deposited into Fano's wife's bank account.
 {¶ 5} Between December 2003 and March 2004, Monnin installed a new front door and storm door at the Georges' residence under the terms of the original contract.
 {¶ 6} On or about March 23, 2004, Monnin arrived at the George's house and saw that the foundation had been dug out. Upon questioning Mrs. George, Monnin learned that Fano had done the work and had received the $20,500 check from Mrs. George as the down payment in December 2003. Monnin told Mrs. George to stop the work because the permits were in JS Group's name and to not pay Fano any more money. Monnin also contacted Fano and told him to stop the job.
 {¶ 7} On March 25, 2004, Monnin sent a cease and desist letter to Fano demanding that he stop using JS Group's permits on the George residence and cease further work on his contract with the Georges. Monnin also sent a letter to the City of Parma Building Department advising them of the situation.
 {¶ 8} On March 25, 2004, the Georges terminated Monnin. On March 31, 2004, the Georges hired First Star Builders, a company owned by Fano's wife, for completion of the job. The contract entered into between the Georges and First Star Builders included a provision that Monnin had been paid $2,500.
 {¶ 9} On July 6, 2004, Monnin filed a complaint against the Georges in Parma Municipal Court alleging that they failed to pay him $5,132.60 for the work, labor, and materials used in installing a front door and storm door on their premises.
 {¶ 10} A bench trial was held on January 21, 2005. At trial, Mary George testified that she thought Monnin and Fano were business partners in JS Group, since they always came out together and they signed the contract together. Based on this, she assumed that Fano would pay Monnin for his work. Indeed, she testified that the contract she entered into with First Star Builders specifically included a provision that stated that Monnin had been paid $2,500 for his work. She said she only learned that the men were not partners in JS Group when Monnin came out to the house on March 23, 2004 and told her that they were not. On cross-examination, she admitted that all payments were made to Martin Fano and not JS Group. She also admitted that she did not deduct the cost of the door from the payment made to Fano.
 {¶ 11} Next, Monnin testified that Fano was not his partner and had only given him leads periodically through the years. He testified that he was unaware that Fano had accepted a check from the Georges after he had returned his check to them or that Fano intended to do the construction on his own. He said he never received any money from the Georges or Fano for the installation of the door. He also testified that he told Mrs. George that he had not been paid by Fano for any of his work.
 {¶ 12} Finally, Fano testified that he paid Monnin $2,500 in cash; however, he was unable to provide any documentation. He stated that he was not in a partnership with Monnin and had nothing to do with JS Group.
 {¶ 13} On March 14, 2005, the trial court entered judgment in favor of Monnin in the amount of $5,132.60 as reasonable compensation for services rendered to the Georges. The trial court also stated the following, in pertinent part:
 {¶ 14} "* * * the court makes the finding that the actions of the defendants do not rise to the level of fraud. Whether or not the defendant truly understood the relationship between Fano and the plaintiff, there is sufficient evidence to support the conclusion that the defendant did not willfully or intentionally attempt to defraud the plaintiff. Perhaps they should have been alerted to the fact that they were not partners at some point, however they committed no fraudulent act * * *.
 {¶ 15} "* * * even if there was no valid contract, the plaintiff performed a service to the benefit of the defendant, and under the doctrine of quantum meruit, the plaintiff is entitled to just compensation * * * the court is cognizant of the fact that a very large participant in this incident, namely Mr. Fano * * *, is absent from this action. This must be so, as a matter of law, due to his convenient bankruptcy. Further, the court recognizes that perhaps the defendants were in great part misled by Mr. Fano. However, as between the two parties, the court finds that the plaintiff should be least deserving to suffer and as a matter of law, the plaintiff is entitled to be compensated under the facts of this case." (OSJ Vol. 106, Pg. 687.)
 {¶ 16} The Georges now appeal the trial court's judgment and raise one assignment of error for our review.
 {¶ 17} "I. The trial court erred as a matter of law in finding that, where a homeowner executed a written contract for home improvements signed by two persons as `contractor's' [sic], payment by the homeowner to one of the contractors did not satisfy the homeowner's obligation to both."
 {¶ 18} In this assignment of error, the Georges claim that the trial court erred in finding that Monnin was entitled to be compensated for installing the door under a theory of quantum meruit. Specifically, the Georges claim that they entered into a contract with an entity known as "JS Group" and that both Fano and Monnin signed the contract as "Contractors." The Georges claim that these implied representations make Fano an agent of Monnin's, justifying their actions in making payments to Fano and negotiating changes to the contract with him. We disagree.
 {¶ 19} The Georges' reliance upon R.C. 1775.15 and claims of apparent authority or apparent agency are misplaced. In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe that the agent possessed the necessary authority. Master Consol. Corp. v.BancOhio Nat'l Bank (1991), 61 Ohio St.3d 570.
 {¶ 20} Here, there is some evidence in the record to support the Georges' initial belief that Monnin and Fano were business partners in JS Group, since they came to the Georges' house on several occasions and signed the contract together. However, the evidence is also very clear that the Georges were later fully apprised that Fano and Monnin were not partners. First, Mrs. George issued a check on December 4, 2003 payable to Martin Fano and not JS Group. Second, on March 23, 2004, Monnin told Mrs. George that he was not partners with Fano and that he had not received any money from Fano. Finally, the Georges terminated Monnin on March 25, 2004 and entered into a contract with Fano, d.b.a. First Star Builders, Inc., on March 31, 2004 to complete the work. Clearly, entering into a contract with Fano, six days after they fired Monnin, indicates that they knew at that point that Fano and Monnin were not partners. Accordingly, the Georges no longer had a good-faith belief that Fano was Monnin's partner and were not justified in assuming that Fano would pay Monnin for his work.
 {¶ 21} Turning now to the issues of oral contract and quantum meruit, we find that the evidence is undisputed that Monnin installed the front door and storm door at the request of the Georges. There is also no dispute as to the cost or reasonableness of the work done by Monnin. Accordingly, Monnin is entitled to just compensation for his work. We note, as did the trial court, that both parties were misled by Fano. However, the Georges could have withheld the money for the cost of the door from the final payment made to Fano. The self-serving notation on the contract between the Georges and First Star Builders, that Monnin had been paid, is not binding on Monnin since he was not a party to that contract and had no knowledge that such a provision existed.
 {¶ 22} The Georges' sole assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and Calabrese, Jr., J., concur.
[1] Plus 5% interest and costs.